TORRUELLA, Circuit Judge
(Concurring).
I join the result, but write separately to express my views on our current sentencing regime as it affected this case.
As set forth below, all of the parties, including the district court, agreed that the sentencing disparity between Poland’s sentence and his cousin’s juvenile sentence supported a sentencing reduction to lessen that disparity. The plain text of Federal Rule of Criminal Procedure 35(b), after amendments made to it in 2002 and 2007, permitted such a reduction. The parties and the district court, however, got caught up in the minutiae of whether those amendments, the latter inspired by Booker, allowed the district court to provide such a reduction. Although I agree with the ultimate result given the existing state of the law, and thus join the majority’s affirmance, I find the events that led to that result troubling.
In order to understand my concerns, I will provide some background that was not essential to the majority opinion but is relevant here. After Poland cooperated, the government filed a motion to reduce Poland’s sentence under Rule 35(b), recommending a 48-month sentence. Poland filed a responsive memorandum, urging the district court to look beyond the factors outlined in U.S.S.G. § 5kl.l and consider all factors under 18 U.S.C. § 3553(a). Poland specifically asked the court to consider the disparity between Poland’s sentence (63 months) and his cousin’s (3 months).
A hearing on the government’s motion was held on January 9, 2008. The district court prefaced the hearing by asking the parties to address the recent 2007 amendments to Rule 35(b), which had occurred a month earlier. The government, going first, explained that Poland’s cooperation alone “is clearly worthy of more than what we have asked for,” but made its recommendation in order to reflect Poland’s delay in cooperating until after sentencing and his obstruction of justice prior to his decision to cooperate. The government then emphasized that Poland’s cousin “received a substantially, substantially less sentence than Jonathan did,” that “the juvenile sentence ... is not even on the radar screen,” and that “the disparity between the two sentences is difficult for me *42 to justify at this point,” given that “the juvenile was more culpable and did more.”
When asked by the district court whether the court was permitted to consider “the 3553(a) factors,” and, in particular, the sentencing disparity in reducing Poland’s sentence, the government responded:
I do, I do. I — at your request I read the rule, I read the notation, the commentary to the rule, and it was very clear — I had a discussion with [Poland’s counsel] about it, it was clear to both of us — that, like a typical sentencing, not a re-sentencing or situation such as this, if you were — you are essentially to treat the Rule 35 motion in the light you would a — if you were re-sentencing Mr. Poland today because you may look beyond the guidelines at 3553(a) factors. And the language of the statute used to be simply that you looked at the guidelines, which of course the Court knows is now advisory. So I read that to mean that the book is open in terms of the factors that you may consider both in the advisory guidelines as well as 3553(a) factors in coming to a conclusion as to what percentage of a departure should be imposed if a departure should be imposed.
So I do believe you can follow 3553(a). 1 would encourage the Court to do so. I certainly did so in general terms, theoretically, in coming up with the reasons why a Rule 35 motion was appropriate. But I do think that Mr. Poland has a number of indicia in his case that speak directly to many of the factors in 3553(a), such as the comparison of his behavior to that of a juvenile and the disparity between their sentences.
When asked, the government clarified that its recommended sentence of 48-months did not reflect the disparity between Poland and his cousin’s sentences, but admitted that “I don’t disagree with anything that [Poland’s counsel] said in his response.” The district court asked if the government’s “agreement that the [3553(a)] factors can govern reflect your office’s consideration of the significance of this change?” The government responded that the “appellate division” had not addressed the issue.
After the hearing, the government attorney consulted with the U.S. Attorney’s Office to determine its position. On January 10, 2008, the government filed a memorandum clarifying that position. In the memorandum the government stated that “while the Court may consider 3553(a) factors in reducing Defendant’s sentence, it is the Government’s position that it may do so only in determining to what extent to reduce the sentence based on Defendant’s cooperation.” Foreshadowing the majority’s reasoning, the Government then stated that “the extent of any reduction is strictly limited by 18 U.S.C. § 3553(e) in this case as a result of the mandatory minimum.”
With this background in mind, I stress my discomfort with a sentencing regime (including its mandatory minimum sentences) in which the good faith efforts of the parties and the district court to do the right thing and reflect the disparity between Poland’s sentence and his cousin’s sentence, were essentially derailed by the complexity and uncertainty of the existing state of the law. The district judge, in fact, stated outright that “[i]f [it] were able to consider these additional § 3553(a) factors, [it] would reduce the defendant’s sentence to thirty months.” United States v. Poland, 533 F.Supp.2d 199, 214 (D.Me.2008). Instead, the district court was reduced to divining the propriety of several changes to Rule 35(b) in light of Booker, ultimately expressing some concern that a unconstrained interpretation of Rule 35(b) *43 may violate the Rules Enabling Act, an Act which, as the sentencing court admitted, has never in its history caused the Supreme Court to invalidate a rule. See id. at 210-11 (citing sources).
I also express disappointment with the government’s change of position. That said, the government did go to great pains to point out that the disparity between Poland’s sentence and his cousin’s sentence was “difficult ... to justify at this point” and expressed great sympathy with Poland’s position that the sentencing disparity should be considered. It is troubling that such concerns had to fall by the way side.
Taken together, the district court’s and the government’s actions are indicative of a sentencing regime (in particular, the mandatory minimum in this case) containing little flexibility. In the real life scenario of sentencing, such a regime makes little sense because it takes away much of the discretion from where it should be, those on the front lines of the criminal justice system. Our sentencing regime reflects the work of persons with a background of much theory and little practice in the art of sentencing. I do not begrudge the district court for its care in attempting to reach the right conclusion. The issue before us is difficult, and given the existing state of law, I am forced to agree with the result. But I am also obliged to vent my frustration with the situation in which we find ourselves mired, a sentencing regime plagued with uncertainty and rigidity.